**United States District Court**
For the Northern District of California

1
2
3
4
5                      UNITED STATES DISTRICT COURT
6                      NORTHERN DISTRICT OF CALIFORNIA
7
8   UNITED STATES FIDELITY AND                No. C-03-5376 SBA (EMC)
    GUARANTY COMPANY, *et al.*,
9                                             **ORDER GRANTING IN PART AND**
            Plaintiffs,                       **DENYING IN PART PLAINTIFFS'**
10                                            **MOTION FOR ATTORNEYS' FEES,**
        v.                                    **EXPENSES, AND COSTS**
11
    THE SCOTT COMPANIES, INC., *et al.*,      **(Docket No. 310)**
12
            Defendants.                       <u>RELATED TO</u>
13  _____/
14  UNITED STATES FIDELITY AND                No. C-06-5590 EMC
    GUARANTY COMPANY, *et al.*,
15                                            **(Docket No. 23)**
            Plaintiffs,
16
        v.
17
    ROBERT NURISSO, *et al.*,
18
            Defendants.
19  _____/
20
21          Currently pending before the Court is Plaintiffs' motion for attorney's fees, expenses, and
22  costs.  Plaintiffs seek fees in the amount of $169,188.50, expenses in the amount of $74,977.71, and
23  costs in the amount of $13,682.46.  Having considered the parties' briefs and accompanying
24  submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and
25  **DENIES** in part Plaintiffs' motion.
26  ///
27  ///
28  ///

**United States District Court**
For the Northern District of California

# I.   FACTUAL & PROCEDURAL BACKGROUND

Previously, the Court awarded a judgment in favor of Plaintiffs against Defendants Robert Nurisso and Joseph Guglielmo.  Mr. Nurisso was held liable to Plaintiffs for $1,020,734, and Mr. Guglielmo for $1,030,544.

In the order finding in favor of Plaintiffs, the Court specifically noted that the Settlement Agreement entered into by the parties contained an attorney's fee provision, which stated: "In the event that legal action becomes necessary or appropriate to enforce or interpret any part of this Agreement or seek remedy for breach thereof, the prevailing party shall be entitled to an award of reasonable attorneys' fees and costs incurred in seeking such enforcement or remedies."[1]  Johnson Decl., Ex. 1 (Settlement Agreement § 20).  The Court stated that Plaintiffs were the prevailing party and ordered the parties to meet and confer to see if they could reach agreement regarding fees and costs.

On June 18, 2007, the Clerk of the Court taxed costs in the amount of $13,682.46.  *See* Docket No. 329 in C-03-5376 SBA (EMC); Docket No. 36 in C-06-5590 EMC.  Defendants did not file a motion contesting the action of the Clerk.  *See* Fed. R. Civ. P. 54(d) (providing that "[c]osts may be taxed by the clerk on one day's notice and that, "[o]n motion served within 5 days thereafter, the action of the clerk may be reviewed by the court").  The parties failed to reach an agreement on the fees and other expenses.  Plaintiffs brought the instant motion seeking recovery of fees, expenses, and costs.

---

[1] As noted in the Court's order granting judgment in favor of Plaintiffs, the parties agreed that, for either an unlisted or undervalued asset, Plaintiffs could apply for relief in this Court (before the undersigned) or in another court of competent jurisdiction.  *See* Johnson Decl., Ex. 1 (Settlement Agreement §§ 5.2(C), 5.3(C)).

In addition to the above, Plaintiffs were entitled to certain remedies for fraudulent transfers of assets.  More specifically, if Plaintiffs identified a transfer of an interest in an asset that occurred on or after November 26, 2003 (*i.e.*, the date the lawsuit in Case No. C-03-5376 SBA was filed), and Plaintiffs reasonably suspected that the transfer was a fraudulent one as defined by California Code of Civil Procedure § 3439, then Plaintiffs could seek a judgment that the transfer was a fraudulent one and obtain any relief provided for by § 3439.  *See id.* (Settlement Agreement § 6.2).  The suit could be filed in any court of competent jurisdiction.  *See id.*

**United States District Court**
For the Northern District of California

## II.   DISCUSSION

Plaintiffs seek fees, expenses, and costs incurred since September 2005, when they began investigation of Defendants' financial status as contemplated by the Settlement Agreement. *See* Mot. at 4; *see also* Johnson Decl., Ex. 1 (Settlement Agreement § 4) ("Guglielmo and Nurisso shall each permit St. Paul to fully review and audit all of their respective financial books and records . . . .").

A.   Costs

As a preliminary matter, the Court notes that there does not appear to be any dispute by the parties regarding the costs sought by Plaintiffs, totaling $13,682.46. First, the Clerk of the Court taxed costs in that amount and Defendants never filed a motion asking the Court to review the Clerk's action. Second, Defendants never argued in their opposition to Plaintiffs' motion that the costs sought by Plaintiffs were unreasonable. The Court therefore turns to the issue of attorney's fees and expenses.

B.   Fees

In their opposition, Defendants argue that fees should not be awarded because Plaintiffs were not the prevailing party. Defendants further argue that, even if they were the prevailing party, the fees sought by Plaintiffs, totaling $169,188.50, are unreasonable.

1.   Prevailing Party

As noted above, in its order finding in favor of Plaintiffs, the Court stated that Plaintiffs were the prevailing party. Defendants argue that this was an erroneous ruling because "Plaintiffs were awarded only a fraction of the amount they were seeking from Defendants." Opp'n at 2. According to Defendants, "Plaintiffs recovered only 20% ($1,020,734 out of $5,101,374) of the amount that they sought against Nurisso and only 51.75% ($1,030,544 out of $1,991,520) of the amount that they sought against Guglielmo." *Id.* The Court does not find Defendants' argument persuasive.

First, Defendants ignore the fact that Plaintiffs sought $5.1 million from Mr. Nurisso and $2 million from Mr. Guglielmo only if the assets were considered unlisted. Plaintiffs specifically requested alternative relief if the assets were considered undervalued -- *i.e.*, $2.9 million against Mr. Nurisso and $1.3 million against Mr. Guglielmo. (Ultimately, the Court concluded that Mr. Nurisso

United States District Court<br>For the Northern District of California

1  had undervalued his assets and that Mr. Guglielmo had failed to list his assets and had undervalued

2  them.)  $1,020,734 out of $2,928,005 is 35%.  $1,030,544 out of $1,283,933 is 80%.

3         Second, Defendant does not adequately take into account the relevant California statutes and

4  case law.  California Code of Civil Procedure § 1021 provides that, "[e]xcept as attorney's fees are

5  specifically provided for by statute, the measure and mode of compensation of attorneys and

6  counselors at law is left to the agreement, express or implied, of the parties . . . ."  Cal. Code Civ.

7  Proc. § 1021.  Under the statute, attorney's fee agreements are permitted, with "no restriction as to

8  the nature of the lawsuits for which such fees may be recovered."  *3250 Wilshire Blvd. Bldg. v. W.R.*

9  *Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993); *see also Lerner v. Ward*, 13 Cal. App. 4th 155, 161

10  (1993) ("'The parties to a contract may validly agree to allow for the award of attorney's fees, even

11  though the suit is based on tort rather than contract.'"); *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal.

12  App. 4th 1338, 1341 (1992) ("Under [§ 1021], the allocation of attorney fees is left to the agreement

13  of the parties.  There is nothing in the statute that limits its application to contract actions alone.").

14         "[The] ability to contract out of the American rule . . . is circumscribed, however, by

15  California Civil Code § 1717, which was 'enacted to limit the ability of a dominant contracting party

16  to provide for a right to attorney's fees on only one side of an agreement.'"  *Berkla v. Corel Corp.*,

17  302 F.3d 909, 919 (9th Cir. 2002).  Under § 1717, "[i]n any action on a contract, where the contract

18  specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall

19  be awarded either to one of the parties or to the prevailing party, then the party who is determined to

20  be the party prevailing on the contract, whether he or she is the party specified in the contract or not,

21  shall be entitled to reasonable attorney's fees in addition to other costs."  Cal. Civ. Code § 1717(a).

22  The statute further provides that "the party prevailing on the contract shall be the party who

23  recovered a greater relief in the action on the contract," although a court "may also determine that

24  there is no party prevailing on the contract."[2]  *Id.* § 1717(b)(1).

25

26         [2] "Although Section 1717 limits the court's ability to enforce an attorney fees clause to 'any
27  action on the contract,' California courts liberally construe 'on a contract' to extend to any action 'as
long as an action "involves" a contract and one of the parties would be entitled to recover attorney fees
28  under the contract if that party prevails in its lawsuit. . . .'"  *In re Baroff*, 105 F.3d 439, 442-43 (9th Cir.
1997).

United States District Court

For the Northern District of California

1    The California Supreme Court has noted that "this [latter] provision [in § 1717(b)], allowing

2 the court to find that there was no party prevailing on the contract . . . , was declaratory of existing

3 law.  As early as 1980, . . . the Courts of Appeal [in California] had recognized that the results of

4 litigation may be *so equivocal* as to permit or even require that no party be found to have prevailed

5 for purposes of attorney fees under section 1717." *Hsu v. Abbara*, 9 Cal. 4th 863, 874 (1995)

6 (emphasis added); *see also Kytasty v. Godwin*, 102 Cal. App. 3d 762, 774 (1980) (stating that the

7 court could not determine who was the prevailing party in a case in which a claimed easement was

8 deemed valid but that its scope was narrower than claimed; noting that the judgment "must be

9 considered good news and bad news to each of the parties"); *Nasser v. Superior Court*, 156 Cal.

10 App. 3d 52, 57-60 (1984) (concluding that there was no prevailing party in a case in which a lessee's

11 option was validated but in which rent was fixed at an amount substantially higher than the lessee

12 had argued for).

13          [T]ypically, a determination of no prevailing party results when both
            parties seek relief, but neither prevails, or when the ostensibly
14          prevailing party receives only a party of the relief sought.  By contrast,
            when the results of the litigation on the contract claims are *not* mixed -
15          - that is, when the decision on the litigated contract claims is purely
            good news for one party and bad news for the other -- the Courts of
16          Appeal have recognized that a trial court has no discretion to deny
            attorney fees to the successful litigant.

17

18 *Hsu*, 9 Cal. 4th at 875-76 (internal quotation marks omitted; emphasis in original).  In short, under §

19 1717, a party "whose litigation success is not fairly disputable" is entitled to fees as a matter of right,

20 but the statute "reserv[es] for the trial court a measure of discretion to find no prevailing party when

21 the results of the litigation are mixed." *Id.*

22    Defendants' argument is in essence that there is no prevailing party in the instant case under

23 § 1717.  The California Supreme Court has instructed that, for purposes of § 1717, "in deciding

24 whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded

25 on the contract claim or claims with the parties' demands on those same claims and their litigation

26 objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Id.*

27 Substance rather than form should be respected and to this extent the trial court should be guided by

28 equitable considerations.  *See id.* at 877; *see also Jackson v. Homeowners Ass'n Monte Vista*

**United States District Court**

For the Northern District of California

1   *Estates-East*, 93 Cal. App. 4th 773, 787 (2001) (noting that "'the continuing theme of the

2   Legislature's discussion of section 1717 has been the avoidance of narrowly defined procedures,

3   which have been seen as favoring the dominant party, in favor of an equitable consideration of who

4   should fairly be regarded as the winner'"). That is, "status as the 'party prevailing on the contract' is

5   ascertained not by technicalities of pleading and procedure but by a pragmatic assessment of the

6   parties' ultimate positions vis-à-vis their litigation objectives as reflected in pleadings, prayers, and

7   arguments." *Estate of Drummond*, 149 Cal. App. 4th 46, 51 (2007).

8           The Court's prior conclusion that Plaintiffs were the prevailing party is justified. Plaintiffs'

9   main objective was to establish that Defendants significantly understated their worth and thus owed

10  additional moneys under the Settlement Agreement. They succeeded in establishing such. The fact

11  that Plaintiffs recovered less than the total money damages requested does not automatically make

12  them a nonprevailing party. *See Trustees of Cent. States, Southeast & Southwest Areas Pension

13  Fund v. Golden Nugget, Inc.*, 697 F. Supp. 1538, 1554 (C.D. Cal. 1988) (rejecting defendant's

14  "position that a party who recovers less than the total relief requested is not a 'prevailing party' and,

15  therefore, precluded from recovering attorney's fees"). Plaintiffs obtained their primary litigation

16  objective.

17          Admittedly, if Plaintiffs had been awarded only a minute percentage of the relief originally

18  requested, then Defendants would have a stronger argument. *See, e.g.*, *Berkla v. Corel Corp.*, 302

19  F.3d 909, 920 (9th Cir. 2002) (concluding that district court did not abuse its discretion in denying

20  attorney's fees to plaintiff as plaintiff "recovered only $23,502 in compensatory damages for breach

21  of the NDA, although he sought more than $1.2 million" -- *i.e.*, only 2% of amount originally

22  sought; emphasizing that, "[i]n this case, [the plaintiff's] demands and objectives clearly involved a

23  substantial financial payoff" but the jury "completely rejected [his] contractual damages theory,

24  instead awarding damages consistent with the estimates offered by [defendant's] expert"). But here,

25  Plaintiffs were hardly awarded a minute percentage of the relief sought, especially when taking into

26  account the alternative request for relief. And regardless of percentages, Plaintiffs were awarded a

27  substantial sum, more than $1 million with respect to each Defendant. *See Ajaxo Inc. v. E*Trade

28  Group Inc.*, 135 Cal. App. 4th 21, 59 (2005) ("We disagree that Ajaxo did not achieve sufficient

1    success to qualify as the prevailing party on the breach of contract (NDA) action.  Simply put, the

2    jury found that E*Trade had breached the NDA, and it awarded Ajaxo $ 1.29 million in damages.

3    While this may have been far short of the damages Ajaxo initially sought, Ajaxo won a simple,

4    unqualified verdict on the breach of contract claim and established monetary damages in excess of $

5    1 million.  Ergo, it was the 'party prevailing on the contract' -- that is, the party who recovered

6    greater relief in the action on the contract.").

7           Finally, it is significant that, in contrast to *Berkla*, the Court in the case at bar did *not*

8    completely reject Plaintiffs' damages theory -- in fact, it largely approved of Plaintiffs' theory for

9    damages, concluding that there had been fraudulent transfers by both Defendants, that Mr. Nurisso

10   had undervalued his assets, and that Mr. Guglielmo had failed to list his assets and further had

11   undervalued them.  Furthermore, while the Court did not accept the calculations of Plaintiffs' expert,

12   it also did not accept the calculations of Defendants' experts.

13          The bottom line is that, as an equitable matter, Plaintiffs were the winner in the litigation.

14   The results of the litigation were not "so equivocal" that the Court should conclude that there was no

15   prevailing party.  *Hsu*, 9 Cal. 4th at 874.  Plaintiffs prevailed on their main legal claims and

16   recovered over $2 million.  Tellingly, Defendants did not cite any case in their papers or at the oral

17   argument where a party recovered millions of dollars and yet was deemed a nonprevailing party for

18   purposes of a fee award.

19          2.      Reasonable Fees

20          Defendants argue next that, even if Plaintiffs are determined to be the prevailing party, the

21   attorney's fees sought by Plaintiffs are excessive.  According to Defendants, Plaintiffs' fees "should

22   be reduced by the same fraction as the amount that Plaintiffs were awarded compared to their

23   prayers for relief."  Opp'n at 3.

24          Undoubtedly, a court should take into account the extent of a prevailing party's success in

25   determining what is a reasonable fee.  *See Clejan v. Reisman*, 5 Cal. App. 3d 224, 241 (1970)

26

27

28

United States District Court

For the Northern District of California

1  (noting that one of the factors to be considered is "the success of the attorney's efforts").[3]  However,

2  Defendants have failed to cite any authority which supports a mathematical proportional reduction

3  of fees based on limited success.[4]  Furthermore, Defendants have not cited any authority indicating

4  that a party's extent of success is itself the dispositive factor in determining fees.  In fact, California

5  case law instructs that there are many other factors that should be taken into account in addition to

6  extent of success -- *i.e.*, the nature of the litigation; its difficulty; the amount involved; the skill

7  required and the skill employed in handling the litigation; the attention given; the attorney's

8  learning, age, and experience in the particular type of work demanded; the intricacies and

9  importance of the litigation; the labor and necessity for skilled legal training and ability in trying the

10  cause; and the time consumed.  *See id.*  Defendants have failed to address any of these additional

11  factors and further have not made any other argument as to why the attorneys' fees sought by

12  Plaintiffs are excessive.

13       The Court therefore finds that the fees sought by Plaintiffs are warranted.  The hourly rates

14  are reasonable, and the number of hours are justified.  The hours represent work starting in

15  September 2005 (approximately two years ago), when Plaintiffs began investigation of Defendants'

16  financial status as contemplated by the Settlement Agreement.  *See* Mot. at 4; *see also* Johnson

17  Decl., Ex. 1 (Settlement Agreement § 4) ("Guglielmo and Nurisso shall each permit St. Paul to fully

18  review and audit all of their respective financial books and records . . . .").  Since September 2005,

19  Plaintiffs have, *inter alia*, investigated Defendants' financial status; filed a motion for judgment,

20  motion for issuance of a TRO, and a complaint to set aside fraudulent transfers; reviewed two sets of

21  opposition papers by Defendants (the papers were materially different); prepared reply briefs; and

22

23  _____

24       [3] *See, e.g.*, *Mustachio v. Great W. Bank*, 48 Cal. App. 4th 1145, 1150-51 (1996) ("[T]he trial
     court did not abuse its discretion in awarding Mustachio the sum of $ 65,000 in attorney's fees following
     appeal.  Mustachio filed a motion for attorney's fees and costs in excess of $ 90,400, which amount
25   included in excess of $ 35,400 for matters other than the prior appeal and approximately $ 55,000 as
     attorney's fees incurred in connection with the appeal.  The trial court well may have reduced
26   Mustachio's award as a result of her only partial victory on appeal.").

27       [4] The Supreme Court has specifically rejected a proportionate approach in the context of statutory fees in civil rights claims.  *See City of Riverside v. Rivera*, 477 U.S. 561, 564-65 (1986)
28   (plurality opinion) ("reject[ing] the proposition that fee awards . . . should necessarily be proportionate
     to the amount of damages a civil rights plaintiff actually recovers").

United States District Court

For the Northern District of California

1    filed supplemental briefing upon request by the Court.  This is a substantial amount of work and

2    supports the number of hours sought by Plaintiffs.

3         Importantly, Defendants do not dispute the reasonableness of the hourly rates and number of

4    hours asserted by Plaintiffs.  Moreover, Plaintiffs have excluded from the hours for which

5    compensation is sought entries which were redacted for privilege purposes.  If anything, the hours

6    claimed may underrepresent the number of hours actually devoted to the matter.

7              3.    Joint and Several Liability

8         The only question remaining with respect to attorney's fees is whether Defendants should be

9    held jointly and severally liable.  Defendants argue that they should not be and that, instead, each

10   individual should each be held liable for only half of the fees awarded.  In response, Plaintiffs

11   contend that joint and several liability is appropriate "because of the intertwined nature of this

12   dispute," Reply at 7: The financial analysis for each Defendant overlapped (*e.g.*, McKinley was

13   jointly owned), and the same legal issues were litigated for each Defendant (*e.g.*, fraudulent transfer

14   into a family limited partnership in which the Defendant was a limited partner).  Plaintiffs assert

15   that, "[u]nder these circumstances, it would be incredibly difficult . . . to apportion the attorneys'

16   fees, expenses and costs it expended to obtain each judgment."  *Id.* at 8.

17        Each party's position has some merit.  On the one hand, Plaintiffs conducted distinct

18   investigations into Defendants (with the exception of McKinley), and there were two distinct

19   judgments against Defendants based on distinct assets (again, with the exception of McKinley).  On

20   the other hand, McKinley was a jointly owned asset, the legal issues with respect to both Defendants

21   were the same (*i.e.*, fraudulent transfer), and it notable that Defendants jointly filed opposition briefs

22   to Plaintiffs' motions for a TRO and judgment as well as joint supplemental briefs.

23        However, each party's position is also extreme.  Defendants' position fails to acknowledge

24   that there was both factual and legal overlap.  Notably, McKinley was the most sizable asset for both

25   individuals, and the legal issues for each individual were -- not surprisingly the same -- given that

26   the same attorney set up family limited partnerships for each.  Plaintiffs' position fails to account for

27   that portion of the factual investigations that was distinct.  It would not be fair, for example, to hold

28   Mr. Nurisso liable for the fees incurred by Plaintiffs in deposing Mr. Guglielmo on matters

United States District Court

For the Northern District of California

1  pertaining solely to his financial disclosure, or vice-versa.  Plaintiffs' claim that the whole process

2  was largely the same for both individuals is belied by their attorneys' billing records as well as their

3  briefs and supporting documents.

4         Under the circumstances, the Court concludes that an appropriate resolution is to hold

5  Defendants jointly and severally liable for 55% of the attorney's fees and, with respect to the

6  remaining 45%, hold Mr. Nurisso individually liable for 55% of the fees and Mr. Guglielmo 45%.

7  The Court arrived at these percentages by examining the billing records and the parties' briefs and

8  supporting documents.  The briefs and supporting documents are especially telling regarding the

9  amount of time spent by the parties on distinct issues and overlapping issues.  Joint and several

10  liability is proper for 55% of the fees because of the overlapping issues; the remaining 45% of the

11  fees was allocated between Defendants on an individual basis based on the Court's assessment of the

12  time spent by Plaintiffs' attorneys with respect to each individual's distinct assets.

13         In short, with respect to the $169,188.50 in fees requested by Plaintiffs, Defendants are

14  jointly and severally liable for $93,053.68.  With respect to the remaining $76,134.82, Mr. Nurisso

15  is individually liable for $41,874.15 and Mr. Guglielmo $34,260.67.

16  C.    Expenses

17         Finally, Defendants argue that the expenses sought by Plaintiffs -- $74,977.71, representing

18  the fees charged by Plaintiffs' expert Stephen Evans -- should be denied because (1) California law

19  does not allow for the recovery of expert fees as part of attorney's fees or costs, even when a

20  contract provides for the recovery of fees and costs by the prevailing party; (2) the Court did not rely

21  on Mr. Evans's work in granting Plaintiffs' motion for judgment; and (3) the accuracy and reliability

22  of Mr. Evans's billing statement is questionable.

23         The second and third arguments are not convincing.  However, Defendants' first argument

24  has merit.  For this argument, Defendants rely on *Ripley v. Pappadopoulos*, 23 Cal. App. 4th 1616

25  (1994).  There, the agreements at issue contained a provision which stated: "'If any action at law or

26  in equity, including an action for declaratory or injunctive relief, is brought to enforce or interpret

27  the provisions of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees

28

1    and costs.'" *Id.* at 1621.  The court held that, in spite of this provision, expert witness fees should

2    *not* have been awarded to the prevailing party.

3         The court explained that, under California Code of Civil Procedure § 1032(b), a prevailing

4    party is generally entitled to recover costs, and the kind of expenses that may or may not be included

5    in a cost award under § 1032 is found in § 1033.5.  *See id.* at 1622.  Section 1033.5 provides that

6    attorney's fees authorized by contract, statute, or law are allowable as costs under § 1032.  *See* Cal.

7    Code Civ. Proc. § 1033.5(a)(10).  In addition, fees of expert witnesses ordered by the court are

8    allowable as costs under § 1032.  *See id.* § 1033.5(a)(8); *see also Ripley*, 23 Cal. App. 4th at 1622

9    n.14 (noting that, under California Evidence Code § 730, a trial court may appoint an expert when it

10   appears that expert evidence is or may be required by the court or a party and that, in such

11   circumstances, the expert's compensation is in the first instance apportioned by the court to the

12   parties and thereafter may be taxed and allowed as costs to the prevailing party).  However, fees of

13   experts not ordered by the court are *not* allowable as costs, except when expressly authorized by

14   law.  *See* Cal. Code Civ. Proc. § 1033.5(b)(1).  "When the numerous statutory provisions in which

15   expert witness fees are expressly declared recoverable are considered together with the express

16   prohibition against the inclusion of such fees in a cost award otherwise, the Legislature's intent

17   becomes clear.  The Legislature has reserved to itself the power to determine selectively the types of

18   actions and circumstances in which expert witness fees should be recoverable as costs and such fees

19   may not otherwise be recovered in a cost award."  *Ripley*, 23 Cal. App. 4th at 1625.

20        The court further noted that expert witness fees should not be considered a party of

21   contractual attorney fees.  "In the absence of some specific provision of law otherwise, attorney fees

22   and the expenses of litigation . . . are mutually exclusive, that is, attorney fees do not include such

23   costs and costs do not include attorney's fees. . . . In view of the clear distinction that has always

24   been drawn between attorney fees and the expenses of litigation, we cannot disregard the

25   Legislature's express prohibition against the inclusion of expert witness fees in a cost award by

26   equating such expenses with attorney fees."  *Id.* at 1626.

27        Plaintiffs argue that *Ripley* should not bar their request for expert fees because they are not

28   seeking expert fees pursuant to the California Code of Civil Procedure but rather pursuant to the

United States District Court

For the Northern District of California

1   Settlement Agreement.  But this argument is unavailing because the prevailing party in *Ripley*, like

2   Plaintiffs here, was seeking expert fees pursuant to a written agreement, and not the California Code

3   of Civil Procedure.  Moreover, even though Plaintiffs contend that the parties contemplated expert

4   fees as being recoverable, *see* Reply at 8  (arguing that expert fees were "a necessary expense that

5   the parties contemplated when they entered into the [Settlement] Agreement"), the Settlement

6   Agreement never expressly stated such; rather, the Settlement Agreement simply referred to

7   attorney's fees and costs.  In this regard, the language of the Settlement Agreement was narrowly

8   drafted similar to the contract in *Ripley* and dissimilar to the broader contractual language described

9   in *Bussey v. Affleck*, 225 Cal. App. 3d 1162 (1990), which was distinguished in *Ripley*.[5]  *See Ripley*,

10  23 Cal. App. 4th at 1627 n.18 (noting that "in *Bussey* the parties' contract included a provision of

11  greater breadth than a general 'costs and attorney fees' provision" -- *i.e.*, the contract required the

12  defendants "'"to pay all costs and expenses of collection including reasonable attorneys' fees"'").

13  Finally, the *Ripley* court instructed that, "assuming expert witness fees may be recovered under a

14  contractual provision, they must be specially pleaded and proven at trial rather than included in a

15  memorandum of costs."[6]  *Id.* at 1627.  Plaintiffs did not expressly plead in either the motion to

16  enforce settlement or the complaint consolidated herein for recovery of expert witness fees as

17  damages.  *See* C-06-5590 EMC Compl. at 9-10 (referring only to costs and not expert fees

18  specifically).  In short, the Court finds *Ripley* dispositive and thus denies Plaintiffs recovery of the

19  expert witness fees.

20

21  _____

22      [5] In *Bussey*, the court "conclude[d] that where a contract provides for payment of costs and
    attorney's fees, the court may allow disbursements of counsel as attorney fees under section 1033.5,

23  subdivision (a)(10) [allowable costs include attorney fees authorized by contract, statute, or law], if they
    represent expenses ordinarily billed to a client and are not included in the overhead component of

24  counsel's hourly rate."  *Bussey*, 225 Cal. App. 3d at 1166.  But the court in *Riley* explicitly rejected the
    holding in *Bussey* and the *Bussey* opinion has been subject to much criticism.  *See, e.g.*, *Benson v.*

25  *Kwikset Corp.*, 152 Cal. App. 4th 1254, 1280 (2007) ("Every subsequent published decision confronting
    this issue has criticized and rejected *Bussey*'s approach.").

26      [6] Although *Ripley* referred to a memorandum of costs only, and Plaintiffs here filed a noticed

27  motion, the reasoning in *Ripley* is still applicable.  Requests for attorney fees in the California state
    courts are handled by noticed motion, as in federal court.  *See* 7 Witkin Cal. Proc. Judg. § 256.

28  California Code of Civil Procedure § 1032, the governing statute for costs which underpins the *Ripley*
    analysis, applies to such motions.  *Id.*

**III.  <u>CONCLUSION</u>**

For the foregoing reasons, the Court grants Plaintiffs' request for attorney's fees but denies their request for expert fees.  With respect to the $169,188.50 in fees requested by Plaintiffs, Defendants are jointly and severally liable for $93,053.68.  With respect to the remaining $76,134.82, Mr. Nurisso is individually liable for $41,874.15 and Mr. Guglielmo $34,260.67. Defendants are also jointly and severally liable for costs of $13,682.46.

This order disposes of Docket No. 310 in C-03-5376 and Docket No. 23 in C-06-5590.

IT IS SO ORDERED.

Dated:  September 18, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge